USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/26/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K2M DESIGN, INC. c/o Scott Maloney, CEO,

Plaintiff,

-against-

PETER K. SCHMIDT, GENE LIM, and
FILMWEST GLOBAL PARTNERSHIP, LLC,

Defendants.

1:22-cv-03069 (MKV)

**OPINION AND ORDER DENYING
MOTION TO DISMISS AND
GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff K2M Design, Inc. ("K2M") brings this action for breach of contract and related claims, alleging that Defendants breached the terms of a Promissory Note (the "Note") executed between the parties. Defendants Gene Lim ("Lim") and Filmwest Global Partnership, LLC ("Filmwest") (together, the "Lim Defendants") move to dismiss the claims against them for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failure to join a party pursuant to Rule 12(b)(7).[1] K2M moves for partial summary judgment against the Lim Defendants on its breach of contract claim. For the following reasons, the motion by the Lim Defendants to dismiss is DENIED and the motion by K2M for partial summary judgment is GRANTED.

---

[1] K2M voluntarily dismissed Defendant Schmidt Consulting Group, Inc. ("SCG") from this action on November 18, 2022. [ECF Nos. 39, 41]. The Court entered default judgment against Defendant Peter K. Schmidt ("Schmidt") on March 21, 2024. [ECF Nos. 110–111].

## BACKGROUND[2]

### I.        The Loan, Note, and Guarantees

K2M and Lim are members of the Entrepreneurs' Organization ("EO"), a professional network that advances entrepreneurship.  SAC ¶ 14.  On October 27, 2021, Lim sent a message to EO members asking if any members were interested in lending $1 million with a twenty-five percent return.  SAC ¶ 16.  The CEO of K2M, Scott Maloney ("Maloney"),[3] responded to Lim's message expressing interest in extending the loan.  SAC ¶ 17.  Lim communicated with K2M, through Maloney, about the loan, explaining that the loan would enable Lim, Schmidt, and SCG to purchase a holding company and assets in the United Kingdom and Switzerland.  SAC ¶ 18.  Lim stated that Defendants had secured investment commitments for over $100 million, and that the loan of $1 million was needed to close on the purchase of the holding company.  SAC ¶ 19.

K2M expressed concern to Lim about its "lack of knowledge about the existence of and the ability to collect on the loan from" Schmidt and SCG.  SAC ¶ 21.  To resolve these concerns, Lim represented that Filmwest and Lim would guarantee payment of the loan if Schmidt or SCG failed to make payment pursuant to the Note.  SAC ¶ 22.  In consideration of the Lim Defendants'

---

[2]        The facts related to the Court's resolution of the Lim Defendants' motion to dismiss are drawn from the Second Verified Amended Complaint [ECF No. 16 ("Second Amended Complaint" or "SAC")], the well-pleaded factual allegations of which are taken as true for purposes of the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court may also consider documents incorporated by reference in the complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

The facts related to the Court's resolution of K2M's motion for partial summary judgment are drawn from the parties' Local Civil Rule 56.1 statements [ECF No. 62 ("K2M 56.1"), ECF No. 65 Section B ("Lim 56.1")] and counterstatements thereto [ECF No. 65 Section A ("Lim Counter 56.1"), ECF No. 70 ¶¶ 45–88 ("K2M Counter 56.1")], the declarations submitted in connection with the motion, and the exhibits attached thereto.  Unless otherwise noted, if only one party's 56.1 statement or evidence is cited, the other party does not dispute the fact asserted, has not offered admissible evidence to refute the fact, or merely disagrees with the inferences to be drawn from the fact.

[3]        For purposes of these motions, the actions of Maloney, as K2M's owner, are referred to as K2M's actions.  [ECF No. 71 ("Maloney Aff.") ¶ 1].

agreement to act as guarantors, the proposed rate of return was reduced from twenty-five percent to twenty percent.  SAC ¶ 22.

Lim sent K2M the Note, which was executed by all parties as of November 2, 2021.  SAC ¶ 23, Ex. A ("Note"); K2M 56.1 ¶ 6; Lim Counter 56.1 ¶ 6.  The Note provides that SCG, as "Borrower," agrees to pay K2M, as "Lender," $1 million, with interest at the rate of twenty percent, for a total of $1.2 million.  Note at 1; Lim Counter 56.1 ¶ 7.  The Note provides that "unpaid principal and accrued interest shall be payable in full by no later than December 31, 2021."  Note ¶ I; K2M 56.1 ¶ 7; Lim Counter 56.1 ¶ 7.  The Note further provides that in the event that payment is more than five days late, SCG would pay K2M a late fee of five percent of the payment amount due.  Note ¶ I; SAC ¶ 26; K2M 56.1 ¶ 8; Lim Counter 56.1 ¶ 8.  The Note allows K2M to declare a default if any payments due under the Note remain unpaid for more than fifteen days from the due date.  Note ¶ I; SAC ¶ 26.  The Note does not contain any provisions requiring written notice of default or payment demand.  K2M 56.1 ¶ 18; Lim Counter 56.1 ¶ 17.  The Note is "personally guaranteed by . . . Schmidt."  Note ¶ V; SAC ¶ 27; K2M 56.1 ¶ 9; Lim Counter 56.1 ¶ 9.  Lim and Filmwest provide "[a] secondary guarantee in the event of a default of both" SCG and Schmidt.  Note ¶ VI; SAC ¶ 28; K2M 56.1 ¶ 10.  The Note further provides that it "shall be construed in accordance with the laws of the State of New York."  Note ¶ IV; K2M 56.1 ¶ 19; Lim Counter 56.1 ¶ 18.  Schmidt executed the Note individually and on behalf of SCG.  Note at 3; K2M 56.1 ¶ 6; Lim Counter 56.1 ¶ 6.  In accordance with the representations in the Note and its communications with Lim, K2M delivered $1 million to SCG.  SAC ¶ 24; K2M 56.1 ¶ 5; Lim Counter 56.1 ¶ 5.

## II.     Nonpayment of the Note and Guarantees

The Note was not paid by December 31, 2021.  SAC ¶ 30; K2M 56.1 ¶ 20.  On January 24, 2022, K2M served Lim with a demand for payment of the Note.  SAC ¶ 31; K2M 56.1 ¶ 21; Lim

Counter 56.1 ¶ 20.  On February 13, 2022, K2M served Lim with another demand for payment of the Note.  SAC ¶ 33; K2M 56.1 ¶ 22.  On March 7, 2022, K2M expressed to Lim, via email, its concern "about the true existence and location of" Schmidt and SCG, and Lim and K2M agreed to meet in a Zoom video conference on March 10, 2022.  SAC ¶ 35; K2M 56.1 ¶ 23; Lim Counter 56.1 ¶ 21.  During that video conference, the Lim Defendants promised repayment of the Note on or before March 31, 2022, which Lim confirmed in writing.  SAC ¶¶ 36, 38.  The Lim Defendants did not repay the Note by March 31, 2022.  SAC ¶ 39.  To date, Defendants have not made payment on the Note.  SAC ¶¶ 30, 32, 34, 39; K2M 56.1 ¶¶ 27, 32–33.

### III.      The Schmidt Settlement

K2M commenced this action on April 13, 2022.  K2M 56.1 ¶ 29; Lim Counter 56.1 ¶ 28. On October 28, 2022, Schmidt and K2M signed a Settlement Agreement that would release all claims between them, including all claims that could have been raised on the loan secured by the Note or in this litigation.  K2M 56.1 ¶ 31; Lim Counter 56.1 ¶ 30.  [ECF No. 71-4 ("Settlement Agreement")].  A Notary Deed (the "Deed") to be executed by Schmidt in favor of K2M no later than October 25, 2022 is part of the consideration provided for in the Settlement Agreement. Settlement Agreement ¶ 2.  The Settlement Agreement provides that its release of claims is effective "[u]pon the execution of this [Settlement] Agreement by the Parties, and the execution of the Deed by Schmidt."  Settlement Agreement ¶ 3.  The Deed provides that it is to be notarized "before the undersigned notary . . . with the official seat in Düsseldorf," Germany.  [ECF No. 72-3 ("Deed")].  The Settlement Agreement provides for an "Initial Payment" of $200,000.00 due by October 27, 2022.  Settlement Agreement ¶ 2.1.  As of November 4, 2022, K2M had not received the signed and notarized Deed or the Initial Payment from Schmidt.  Lim 56.1 ¶¶ 35–36; Lim

Counter 56.1 ¶ 30.  [ECF No. 91-3].  The Lim Defendants are not parties to the Settlement Agreement.  *See* Settlement Agreement at 1.

On November 18, 2022, K2M voluntarily dismissed SCG from this action after informing the Court that SCG "is not affiliated with Defendant Peter K. Schmidt [and] was sued incorrectly." [ECF No. 32; *see* ECF Nos. 39, 41].  K2M 56.1 ¶ 34; Lim Counter 56.1 ¶ 33; Lim 56.1 ¶ 38. "Schmidt Consulting Group, Inc." is a corporation formed under the laws of the State of Florida, of which Gene Schmidt is the CEO.  [ECF No. 92 ("Schmidt Aff.") ¶¶ 1–2, 7; ECF No. 72 ("Christopoulos Aff.") ¶ 8].  The United States-based Schmidt Consulting Group, Inc. is not affiliated with Schmidt and has no European ties.  Schmidt Aff. ¶¶ 8–11, 15–16, 21; K2M Counter 56.1 ¶ 55.  The United States-based Schmidt Consulting Group, Inc. did not issue, sign, or authorize the issuance or signing of the Note.  Schmidt Aff. ¶¶ 13, 17.  However, the Note contains the unauthorized use of a trademark owned by the United States-based Schmidt Consulting Group, Inc.  Schmidt Aff. ¶¶ 12, 18; *see* Note.  Schmidt Consulting Group, Inc. is not an existing corporate entity in Germany.  Christopoulos Aff. ¶¶ 4–11; K2M Counter 56.1 ¶ 56.

## **PROCEDURAL HISTORY**

K2M initiated this action by filing a Complaint against Defendants SCG, Schmidt, Lim, and Filmwest.  [ECF No. 1].  K2M filed an Amended Complaint as of right pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure.  [ECF No. 8].  Thereafter, K2M moved for leave to file the Second Amended Complaint, which the Court granted, [ECF Nos. 12–13], and K2M filed the Second Amended Complaint.  [ECF No. 16].  The Lim Defendants filed an Answer to the Second Amended Complaint, which was later amended.  [ECF Nos. 17, 19].

Discovery progressed pursuant to a Civil Case Management Plan and Scheduling Order. [ECF No. 32].  Following the close of discovery, the parties filed pre-motion letters in anticipation

of the present motions.  [ECF Nos. 61, 64].  The Court granted the parties leave to file the present motions.  [ECF No. 67].

The Lim Defendants move to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure [ECF No. 75], filing a memorandum of law in support.  [ECF No. 78 ("Lim MTD Mem.")].  K2M opposed the motion to dismiss.  [ECF No. 81].  The Lim Defendants filed a reply in further support of their motion.  [ECF No. 89].

K2M simultaneously moves for partial summary judgment as to its breach of contract claim against the Lim Defendants, filing a memorandum of law in support [ECF No. 70 ("K2M MSJ Mem.")], in addition to the Maloney and Christopoulos Affidavits and associated exhibits in support [ECF Nos. 71–72].  The Lim Defendants opposed, filing several exhibits.  [ECF No. 82 ("Lim MSJ Opp.")].  K2M filed a reply [ECF No. 91 ("K2M MSJ Reply")], together with the Schmidt Affidavit and associated exhibits [ECF No. 92].  K2M requests oral argument in connection with its motion for partial summary judgment.  [ECF No. 74].

## LEGAL STANDARD

### I.   Motion to Dismiss

#### A.  Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is

inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Rule 12(b)(7): Failure to Join a Party

"A party may seek dismissal under Rule 12(b)(7) for failure to join a necessary party under Rule 19." *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47–48 (2d Cir. 1996). Under Rule 19, "a court must dismiss an action where a party was not joined only if: (1) an absent party is required, (2) it is not feasible to join the absent party, and (3) it is determined in equity and good conscience that the action should not proceed among the existing parties." *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 38 (S.D.N.Y. 2020) (internal quotation marks omitted); *In re Great Atl. & Pac. Tea Co., Inc.*, 467 B.R. 44, 54 n.9 (S.D.N.Y. 2012), *aff'd sub nom. Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co.*, 508 F. App'x 63 (2d Cir. 2013). A party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a); *see Gallagher*, 477 F. Supp. 3d at 38.

## II.   Summary Judgment

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The Court's role on a motion for summary judgment is "not to resolve disputed issues of fact but to

assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine factual dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The Court "may not make credibility determinations or weigh the evidence." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). In ruling on summary judgment, the Court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id.* If there is evidence in the record that supports a reasonable inference in favor of the opposing party, summary judgment is improper. *See Brooklyn Ctr. For Indep. of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 64 (2d Cir. 2021).

## DISCUSSION

### I.    Motion to Dismiss

The Lim Defendants argue that this action must be dismissed as against them because (1) K2M failed to satisfy, and fails to plead that it satisfied, a contractual condition precedent, and (2) SCG, against whom K2M voluntarily dismissed this action, is an indispensable party under Rule 19.[4] *See* Lim MTD Mem. 6–12. Neither argument has merit.

### A.    The Lim Defendants Provided a Guarantee of Payment, Not a Guarantee of Collection

The Lim Defendants argue that K2M cannot maintain its claims against them because K2M failed to satisfy a condition precedent in the Note, and in turn fails to plead that it did so. The Lim

---

[4]     Although the Lim Defendants appear to move for dismissal of the entire action as against them, *see* Lim MTD Mem. 12, their arguments address only K2M's breach of contract claim. However, the Second Amended Complaint also asserts an unjust enrichment claim against all Defendants, and a fraud claim against Lim alone. *See* SAC ¶¶ 49–70.

Defendants contend that the guarantee they provided in the Note was not a guarantee of payment, but rather a conditional guarantee, or a guarantee of collection. Thus, the Lim Defendants argue, K2M was obligated to exhaust all remedies against SCG, as the primary obligor, and Schmidt, as the first guarantor, before proceeding against the Lim Defendants in this action. *See* Lim MTD Mem. 6–9.

To plead a breach of contract claim under New York law, as called for by the Note, *see* Note ¶ IV, a complaint must plead "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted). In addition, a breach of contract claim is subject to dismissal for failure to state a claim where a plaintiff has not plausibly alleged its satisfaction of a contractual condition precedent. *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 754 (S.D.N.Y. 2021). Under New York law, "[a] condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418 (N.Y. 1995) (internal quotation marks omitted); *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016). A party pleading a condition precedent must "allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c).

The Lim Defendants argue that K2M's pursuit of remedies against SCG and Schmidt was a condition precedent to the Lim Defendants' duty to perform their guarantee in the Note. *See* Lim MTD Mem. 8–9. "There are two kinds of guarantees: guarantees of payment and of collection." *Thomas H. Lee Equity Fund V, L.P. v. Bennett*, No. 05 CIV. 9608 GEL, 2007 WL 950133, at *3

(S.D.N.Y. Mar. 28, 2007) (Lynch, *J.*).  In a guarantee of collection, "the guarantor undertakes the responsibility to pay if and only if the debt cannot be collected from the principal through legal proceedings," while, by contrast, a guarantee of payment imposes "an unconditional guaranty that the debtor will pay on the debt." *Id.* (quoting *N.Y.C. Dep't of Fin. v. Twin Rivers, Inc.*, 920 F. Supp. 50, 52–53 (S.D.N.Y. 1996)); *Donjon Marine Co. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 742 (2d Cir. 2013) ("[A]n unconditional guarantee of payment . . . permits a creditor to proceed directly against a guarantor if the debtor fails to pay . . . [whereas] a conditional guarantee of collection . . . requires the guarantor to pay if and only if the debt cannot be collected from the debtor via legal proceedings."); *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 34 F. Supp. 3d 321, 331 (S.D.N.Y. 2014) ("A guarantee of collection requires the creditor to pursue legal proceedings against the primary debtor before attempting to collect payment from the guarantor; a guarantee of payment . . . does not require any legal proceedings between the primary debtor and the creditor as a condition to seeking payment from the guarantor.").  Thus, with respect to a guarantee of payment, "[i]f for some reason, the debtor fails to make payment to the creditor, he can proceed directly against the guarantor." *Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3 (quoting *Twin Rivers*, 920 F. Supp. at 53); *Greenlight Reinsurance*, 34 F. Supp. 3d at 331 ("A guarantee of payment is, as it says, an unconditional promise to pay the debt as it becomes due."). "In other words, enforcement of a guarantee of payment is not conditioned on exhaustion." *Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3.

The Lim Defendants argue that their guarantee in the Note is "a classic example of guarantee of collection only."  Lim MTD Mem. 8.  "The language of the agreement . . . should guide the determination of which kind of guarantee is involved."  *Donjon Marine Co.*, 523 F. App'x at 742 (quoting *Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3); *Twin Rivers*, 920 F.

Supp. at 52 ("A court must look to the language of the specific guaranty to determine the nature of the guaranty.").  The Note at issue here provides that "[a] secondary guarantee in the event of default of both the Borrower [SCG] and the Personal Guarantor [Schmidt] of this Note is agreed to and entered into by" the Lim Defendants.  Note ¶ VI.

The plain language of the Note provides no basis for the Court to conclude that the Lim Defendants' guarantee is conditioned on anything other than SCG's and Schmidt's default, and thus is a guarantee of payment.  Under New York law, "[a] contract of suretyship does not depend upon the use of technical words but upon a clear intent that one party as surety binds himself to the second party as creditor to pay a debt contracted by a third party, either immediately upon default of the third party or after attempts to effect collection from the third party have failed." *Gen. Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92, 89 N.E.2d 238 (N.Y. 1949).  Where a guarantor "binds himself to pay immediately upon default of the debtor, he becomes a guarantor of payment." *Id.*  That is precisely the case here, where the Lim Defendants' obligation to pay the Note is contingent only upon "the event of default of both" SCG and Schmidt.  Note ¶ VI.  Accordingly, the Lim Defendants' guarantee is a guarantee of payment, not a conditional guarantee or a guarantee of collection only.  *See Donjon Marine Co.*, 523 F. App'x at 742 (holding that district court did not err in finding guarantee of payment, not collection, including because defendant "did not explicitly agree 'to pay only after all attempts to obtain payment from the debtor have failed'" (quoting *Gen. Phoenix Corp.*, 300 N.Y. at 92)); *see also Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3; *cf., e.g.*, *Twin Rivers*, 920 F. Supp. at 53 (finding guarantee of collection due to language that stated "[t]his is a guarantee of collection and not of payment" and required that the obligee "first have exhausted all of its remedies against Obligor to recover from the Obligor . . . before requiring payment of any part thereof from the Guarantor").  It is not the case, then, as the

Lim Defendants argue, *see* Lim MTD Mem. 9, that K2M "has no recourse against the [Lim] Defendants without first having pursued its remedies against the borrower." *Id.*

The Lim Defendants also argue, perhaps in the alternative, that K2M fails to plead "[d]efault by both" SCG and Schmidt as a condition precedent to the Lim Defendants' guarantee. Lim MTD Mem. 9.  Not so.  "For a plaintiff to establish a *prima facie* case that it is entitled to recover on a guarantee under New York law, it must show: (1) that it is owed a debt from a third party; (2) that the defendant made a guarantee of payment of the debt; and (3) that the debt has not been paid by either the third party or the defendant." *Chem. Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994).  Here, K2M pleads each element of its entitlement to recover on the Lim Defendants' guarantee of payment.  First, under the terms of the Note, K2M was owed a debt from SCG and Schmidt.  SAC ¶¶ 24–27; Note ¶¶ I, V.  Second, the Lim Defendants guaranteed SCG's and Schmidt's total payment obligation to K2M.  SAC ¶¶ 22, 28; Note ¶ VI.  Finally, both SCG and Schmidt defaulted, rendering K2M entitled to recover on the Lim Defendants' guarantee.  SAC ¶¶ 30, 32, 34, 39 ("Defendants failed to pay the Loan as required by the Note."); *see Chem. Bank*, 13 F.3d at 573.

In short, because the Lim Defendants provided a guarantee of payment, and not a guarantee of collection, there is no condition precedent in the Note that K2M exhaust all remedies against SCG and Schmidt prior to proceeding against the Lim Defendants.  K2M has adequately pleaded its entitlement to pursue its guarantee-based claims against the Lim Defendants, and the Court DENIES the Lim Defendants' motion to dismiss on the basis of K2M's failure to satisfy a condition precedent.

B.  Schmidt Consulting Group, Inc. Is Not an Indispensable Party

The Lim Defendants next argue that K2M's claims against them are subject to dismissal because an indispensable party—SCG—is absent from this action.  *See* Lim MTD Mem. 9–12. K2M voluntarily dismissed SCG from this action after informing the Court that such an entity did not exist as a German company affiliated with Schmidt, and thus had been improperly sued.  [*See* ECF Nos. 32, 39, 41].

K2M argues that SCG is a necessary party because it is the principal obligor of the Note, without whom the Lim Defendants are unable to pursue their right of subrogation (which they have not asserted).  *See* Lim MTD Mem. 10–11.  The Lim Defendants argue that SCG's absence renders the Court unable to "accord complete relief among existing parties" under Rule 19.  Fed. R. Civ. P. 19(a)(1)(A).  The Lim Defendants are correct that, under New York law, a guarantor "is equitably entitled to full indemnity against the consequences of a principal obligor's default."  *Lori-Kay Golf, Inc. v. Lassner*, 61 N.Y.2d 722, 723, 460 N.E.2d 1097, 1098 (N.Y. 1984).  The Lim Defendants argue that they will be unable to pursue such indemnity because the liability of Schmidt, himself a guarantor, is secondary to SCG's, and a "the guarantor is not liable unless the principal is bound."  Lim MTD Mem. 10 (quoting *Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 56, 191 N.E.2d 894, 897 (N.Y. 1963)).  However, Schmidt signed the Note on behalf of SCG, *see* Note at 3, and "[o]ne who signs an agreement on behalf of a nonexistent principal may himself be held liable on that agreement."  *P.T. Eka Sari Lorena Airlines v. Air Transp. Grp. Inc.*, No. 08 CIV. 5469 (AKH), 2009 WL 1360921, at *2 (S.D.N.Y. May 15, 2009) (quoting *Grutman v. Katz*, 202 A.D.2d 293, 294, 608 N.Y.S.2d 663, 664 (1st Dep't 1994)).

Moreover, Schmidt is liable on the Note personally as the first guarantor, whose non-payment triggered the Lim Defendants' secondary guarantee.  Thus, Schmidt *is* the principal or

primary obligor relative to the Lim Defendants' position as second guarantor.  *See* Note ¶¶ V, VI; Restatement (Third) of Suretyship & Guaranty § 22(1)(a) (1996) ("[W]hen the principal obligor is charged with notice of the secondary obligation[,] it is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor performs the secondary obligation[.]").  In addition, a "guarantor who pays also has a right of contribution from any co-guarantors."  *In re AOG Ent., Inc*, 558 B.R. 98, 110 (Bankr. S.D.N.Y. 2016); *Hard v. Mingle*, 206 N.Y. 179, 184, 99 N.E. 542, 542–44 (N.Y. 1912) ("[S]o long as [a guarantor] is legally liable upon his guaranty, he may pay the claim, and may then seek contribution from his coguarantors[.]").  Schmidt was named in this action and K2M has obtained a default judgment against him.  [*See* ECF Nos. 110–111].  Accordingly, a judgment against Schmidt, both in his capacity as signatory for SCG and as personally liable on the Note, permits the Lim Defendants to pursue their right of subrogation, indemnity, or contribution.

The Lim Defendants also argue that SCG's absence precludes them from raising affirmative defenses.  *See* Lim MTD Mem. 11.  "As a general rule, guarantors in New York do not have standing to assert affirmative defenses properly belonging to the obligor, the party whose obligations the guarantors have guaranteed."  *Sterling Financial Services Co., Inc. v. Franklin*, 259 Fed. App'x 367, 369 (2d Cir. 2008).  However, when, as in the case of SCG and Schmidt, "the guarantor and the principal obligor are so close as to be considered one and the same, the guarantor may assert the defenses of the principal."  *Midwest Corp. v. Glob. Cable, Inc.*, 688 F. Supp. 872, 875 (S.D.N.Y. 1988).  Thus, Schmidt, prior to his default, could have raised any defenses SCG was entitled to raise.  *See Santander Bank, N.A. v. Contreras*, 414 F. Supp. 3d 650, 655 (S.D.N.Y. 2019).  Schmidt's default does not alter the Court's conclusion, because "[t]he purpose of this rule is clearly to protect the principal by giving him absolute freedom to use (or not to use) his cause of

14

action most beneficially to himself." *Taylor & Jennings, Inc. v. Bellino Bros. Constr. Co.*, 57 A.D.2d 42, 45, 393 N.Y.S.2d 203, 205 (3d Dep't 1977). By defaulting, Schmidt has waived his right to assert any affirmative defenses. *See Brito v. ATA Freight Line, Ltd.*, No. 20-CV-3132 (EK), 2021 WL 7830146, at *5 (E.D.N.Y. Aug. 24, 2021). In any event, this argument is academic, because, as further described below, the sole affirmative defense that the Lim Defendants mention as arguably barred—"K2M's lack of due diligence in entering into a million dollar loan without even minimal investigation," Lim MTD Mem. 11—does not obviate the Lim Defendants' liability. *See infra* Section II.

Thus, SCG is not an indispensable party pursuant to Rule 19, and the Court DENIES the Lim Defendants' motion to dismiss pursuant to Rule 12(b)(7).

Accordingly, the Court DENIES the Lim Defendants' motion to dismiss the Second Amended Complaint in its entirety.

## II.    Motion for Partial Summary Judgment

K2M moves for summary judgment against the Lim Defendants on its breach of contract claim only. *See* K2M MSJ Mem. 3. "To prevail on a breach of contract claim [under New York law], a party must prove the following elements: (1) a valid contract existed between the parties; (2) the adversary breached the contract; (3) the party performed its obligations under the contract; and (4) the party was damaged as a result of the breach." *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 345 (S.D.N.Y. 2021); *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011); *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (N.Y. 2022); *see* K2M 56.1 ¶ 19; Lim Counter 56.1 ¶ 18 (agreeing that the Note is governed by New York law); Note ¶ IV. In addition, "[t]o establish a guarantor's liability for default, a plaintiff must show that (1) there is an underlying obligation that has not been paid; (2) there is a guarantee of

that underlying obligation; and (3) the guarantor has failed to make payment in accordance with the guarantee's terms." *Nemesis 2 LLC v. Paladino*, No. 19-CV-3373 (RA), 2019 WL 6215386, at *4 (S.D.N.Y. Nov. 21, 2019); *see Chem. Bank*, 13 F.3d at 573. Here, there is no genuine dispute of material fact relevant to the disposition of K2M's breach of contract claim against the Lim Defendants for their failure to perform their guarantee under the Note, and K2M is entitled to judgment as a matter of law on that claim.

First, the Note is a valid and enforceable contract. The Note is duly executed by K2M, Schmidt, SCG, Lim, and Filmwest. Note at 3; K2M 56.1 ¶¶ 5–12; Lim Counter 56.1 ¶¶ 5–11. The Note contains clear and definite promises for SCG to pay K2M, and for Schmidt, Lim, and Filmwest to guarantee that payment. *See* Note ¶¶ I, V, VI. No party disputes that the Note is a valid contract.

Second, the Lim Defendants breached the Note and failed to make payment to K2M in accordance with their guarantee. The Note states that the Lim Defendants provide "[a] secondary guarantee in the event of a default of both" SCG and Schmidt. Note ¶ VI. Neither SCG nor Schmidt paid the Note in accordance with its terms. K2M 56.1 ¶¶ 20, 27; Lim Counter 56.1 ¶ 26. Although the Lim Defendants "[d]isagree that . . . Schmidt failed and refused to remit any payment to K2M," the evidence they cite in support of this contention relates to Schmidt's purported agreement to settle this matter with K2M, not Schmidt's nonpayment of and default under the Note. Lim Counter 56.1 ¶ 19. The Note does not require written notice of default or a payment demand to enforce its terms, including the guarantees. K2M 56.1 ¶ 18; Lim Counter 56.1 ¶ 17. Accordingly, the Lim Defendants' guarantee obligation to K2M ripened immediately upon SCG's and Schmidt's default. *See Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3; *Greenlight Reinsurance*, 34 F. Supp. 3d at 331; *Gen. Phoenix Corp.*, 300 N.Y. at 92. The Lim Defendants

have not paid K2M in accordance with the terms of their guarantee.  *See* K2M 56.1 ¶ 27; Lim Counter 56.1 ¶ 26.  Thus, the Lim Defendants are in breach of the Note, having become liable upon their failure to pay the guarantee following default by SCG and Schmidt.

Third, K2M performed its obligations under the Note.  The parties do not dispute that on November 2, 2021, K2M caused a loan of $1 million to be delivered to SCG through a wire to a bank account in the name of Schmidt.  K2M 56.1 ¶ 5; Lim Counter 56.1 ¶ 5; Note ¶ VIII.  The Lim Defendants do not dispute that K2M performed its obligations under the Note.  *See* K2M 56.1 ¶ 42; Lim Counter 56.1 ¶ 41 (contending that K2M failed to perform its obligations by preventing settlement, not by failing to perform its obligations under the Note).

Fourth, K2M has suffered damages as a result of the Lim Defendants' breach because it has not been paid under the Note.  The Lim Defendants "[d]ispute that all amounts are now due and owing to K2M," Lim Counter 56.1 ¶ 27, but the uncontroverted language of the Note specifies the damages flowing from breach, including K2M's right "to declare the entire unpaid principal balance, together with all other unpaid sums," including the five percent late charge and twenty percent interest, "immediately due and payable."  Note ¶ I.  The New York Court of Appeals has recognized that "when the parties by their contract provide for the consequences of a breach, lay down a rule to []measure the damages, and agree when they are to be paid, the remedy thus provided must be exclusively followed."  *McCready v. Lindenborn*, 172 N.Y. 400, 409, 65 N.E. 208, 211 (N.Y. 1902); *X.L.O. Concrete Corp. v. John T. Brady & Co.*, 104 A.D.2d 181, 184, 482 N.Y.S.2d 476, 479 (1st Dep't 1984), *aff'd*, 66 N.Y.2d 970, 489 N.E.2d 768 (N.Y. 1985).  Accordingly, K2M has suffered damages as a result of the Lim Defendants' failure to pay their guarantee under the Note.

The Lim Defendants offer several arguments in opposition to K2M's motion for partial summary judgment.  None of these arguments is supported by evidence creating a reasonable inference that there is a genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 256.

First, the Lim Defendants argue that their guarantee in the Note is ambiguous because "while it states [the Lim Defendants] [are] guarantor[s], it does not say a guarantor of what."  Lim MSJ Opp. 7.  The Lim Defendants contend that summary judgment is inappropriate because interpretation of the guarantee depends on extrinsic evidence.  Lim MSJ Opp. 8.  The Lim Defendants' attempt to create ambiguity is belied by the plain language of the Note.  *See Nemesis 2 LLC*, 2019 WL 6215386, at *3 ("Under New York law . . . guarantees are subject to traditional contract interpretation principles."); *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (N.Y. 2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms[.]").  The Note provides for "[a] secondary guarantee [by the Lim Defendants] in the event of a default of both" SCG and Schmidt.  Note ¶ VI.  As explained above with respect to the Lim Defendants' motion to dismiss, this language is a clear and unambiguous guarantee of payment upon the primary obligors' default.  *See Donjon Marine Co.*, 523 F. App'x at 742; *Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3.  "[A] motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008); *accord Gen. Phoenix Corp.*, 300 N.Y. at 92 ("Where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and parol evidence is not admissible as an aid in interpretation; no trial is necessary to determine the legal effect of the contract.").

The Lim Defendants attempt to resort to extrinsic evidence, such as the parties' contemporaneous statements, to introduce ambiguity to their guarantee, *see* Lim MSJ Opp. 7, but "[a]mbiguity is determined by looking within the four corners of the document, not to outside sources." *Kass v. Kass*, 91 N.Y.2d 554, 566, 696 N.E.2d 174, 180 (N.Y. 1998); *Nemesis 2 LLC*, 2019 WL 6215386, at *7 (holding that it is improper to use extrinsic evidence to introduce ambiguity to a contract on a motion for summary judgment). "Ambiguity . . . is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co.*, 526 F.3d at 68. Here, contrary to the Lim Defendants' assertion that "a guarantor of *what*" is unclear, Lim MSJ Opp. 7 (emphasis added), no reasonably intelligent person could interpret that the Note did not guarantee the Lim Defendants' *payment* in the event of SCG's and Schmidt's default. *See* Note ¶ VI; *Donjon Marine Co.*, 523 F. App'x at 742; *Thomas H. Lee Equity Fund*, 2007 WL 950133, at *3.

The Lim Defendants next argue that K2M is not entitled to summary judgment because it voluntarily dismissed SCG from this action, and the Lim Defendants' guarantee became due only upon both SCG's and Schmidt's default. *See* Lim MSJ Opp. 8. However, as noted above, "[o]ne who signs an agreement on behalf of a nonexistent principal may himself be held liable on that agreement." *P.T. Eka Sari Lorena Airlines*, 2009 WL 1360921, at *2 (quoting *Grutman*, 202 A.D.2d at 294). Schmidt signed the Note "individually and on behalf of" SCG, a purported German company based in Düsseldorf. Note at 3; K2M 56.1 ¶ 6; Lim Counter 56.1 ¶ 6. The Lim Defendants argue that a triable issue of fact exists as to whether SCG is indeed a fictitious entity. *See* Lim MSJ Opp. 8–9. However, the Christopoulos Affidavit supports that Schmidt Consulting Group, Inc. does not exist as a German corporation affiliated with Schmidt. *See* Christopoulos Aff. ¶¶ 8–11. Moreover, the Schmidt Affidavit establishes that the *United States*-based corporation

called Schmidt Consulting Group, Inc. is unaffiliated with Schmidt, has no European ties, did not authorize the signing or issuing of the Note, and, importantly, did not authorize the use of its name and trademark on the Note.   Schmidt Aff. ¶¶ 7–13, 15–18, 21.   The Lim Defendants have not "come forward with *specific facts* showing that there is a genuine issue" as to the nonexistence of SCG as a German corporate entity affiliated with Schmidt sufficient defeat summary judgment. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199, 203 (2d Cir. 1989) (emphasis added).

The Lim Defendants additionally argue that a genuine dispute of material fact exists as to whether K2M proximately caused its own loss by failing to conduct adequate due diligence on SCG and Schmidt prior to executing the Note.   *See* Lim MSJ Opp. 9–10.   A plaintiff raising a breach of contract claim "must prove that a defendant's breach directly and proximately caused his or her damages."   *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).   Contract damages "actually follow or may follow from the breach of the contract" and are not "the result of other intervening causes."   *Id.* (internal quotation marks omitted).   Although it may have been prudent for K2M to conduct a more thorough investigation into its counterparties, that does not negate a finding that there is no genuine dispute of material fact that the Lim Defendants' failure to pay its guarantee when due proximately caused K2M's damages.   *See Bank Midwest, N.A. v. Hypo Real Est. Cap. Corp.*, No. 10 CIV. 232 WHP, 2010 WL 4449366, at *4 (S.D.N.Y. Oct. 13, 2010) ("The existence of other potential causes does not negate a finding that [defendant's] actions were a proximate cause of [plaintiff's] injury."); *accord Coastal Power Int'l v. Transcon. Cap. Corp.*, 10 F. Supp. 2d 345, 366 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 163 (2d Cir. 1999).

Finally, the Lim Defendants argue that genuine disputes of material fact exist as to K2M's violation of the Settlement Agreement and refusal to accept a tender of payment from Schmidt. At the threshold, and critically, the Court notes that the Lim Defendants are not parties to the Settlement Agreement, and the Settlement Agreement was to release claims only as between the parties to it, Schmidt and K2M. Settlement Agreement ¶ 3. However, even assuming, *arguendo*, that the Settlement Agreement was to release K2M's claims against the Lim Defendants, it does not preclude summary judgment here.

The parties do not dispute that Schmidt and K2M executed a Settlement Agreement on October 28, 2022, under which Schmidt agreed to pay K2M amounts due under the Note, including the Initial Payment of $200,000.00. Lim MSJ Opp. 10; K2M 56.1 ¶ 31. The Settlement Agreement provides that part of Schmidt's consideration for the dismissal of this action was Schmidt's execution of a Deed in favor of K2M by October 25, 2022. Settlement Agreement ¶ 2. The Settlement Agreement further provides that the underlying claims would be released only "[u]pon the execution of this [Settlement] Agreement by the Parties, *and* the execution of the Deed by Schmidt." Settlement Agreement ¶ 3 (emphasis added).

The parties dispute whether the Deed was properly notarized such that the Settlement Agreement was consummated. The Lim Defendants contend that the Deed was notarized in Switzerland but that K2M prevented settlement from being effectuated by insisting on a second, German notarization that Schmidt could not achieve; K2M contends that it was always understood that the Deed must be notarized in Germany. *See* Lim MSJ Opp. 10–11; K2M MSJ Reply 9. The plain text of the Deed provides that it is to be notarized "before the undersigned notary . . . with the official seat in Düsseldorf," a city in Germany. Deed at 1. Accordingly, notarization was plainly to occur in Germany, which the parties do not dispute did not occur. *See* Lim 56.1 ¶¶ 35–

36; Lim Counter 56.1 ¶ 30; K2M Counter 56.1 ¶ 88.  Because no signed and notarized Deed was received by K2M by October 25, 2022, the Settlement Agreement's release of claims is ineffective. [*See* ECF Nos. 91-3, 91-4].  Accordingly, the Settlement Agreement does not bar summary judgment on K2M's breach of contract claim against the Lim Defendants.

Nor does K2M's purported "refusal" to accept Schmidt's tender of $200,000.00 preclude summary judgment.  No specific facts in the record support the Lim Defendants' assertion that K2M "refused" Schmidt's tender; indeed, K2M consistently followed up with Schmidt's counsel regarding a receipt for the Initial Payment due under the Settlement Agreement.  [*See* ECF No. 91-3; 91-4].  In any event, and once again, any purported tender was made by Schmidt to K2M, *not* by the Lim Defendants.

Accordingly, the Court finds that K2M has established the absence of any genuine factual dispute as to the Lim Defendants' liability for breach of contract for their failure to pay in accordance with their guarantee under the Note, and the Lim Defendants have not set forth specific facts showing a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 323; *Anderson*, 477 U.S. at 256.  The Court GRANTS K2M's motion for summary judgment against the Lim Defendants as to its breach of contract claim against them.

### III.   Unjust Enrichment Claim

K2M raises a claim for unjust enrichment against the Lim Defendants on which it does not seek summary judgment.  *See* SAC ¶¶ 49–57.  Under New York law, "[t]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 746 (N.Y. 2012) (cleaned up).  "Where the parties executed a valid and enforceable written contract governing a particular subject matter,

recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 907 N.E.2d 268, 274 (N.Y. 2009). To this end, "courts in this Circuit have long held that a claim for unjust enrichment is duplicative of a breach-of-contract claim where a valid contract exists." *Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498, 508 (S.D.N.Y. 2023).

K2M's unjust enrichment claim arises out the same set of facts as its breach of contract claim. *See* SAC ¶¶ 50–57. Indeed, K2M pleads its unjust enrichment claim "in the alternative." SAC ¶ 50. As discussed above, the Court has found no genuine factual dispute that the Note is a valid and enforceable contract upon which the Lim Defendants are liable for breach, *see supra* Section II, and K2M's claim for unjust enrichment against the Lim Defendants is thus duplicative. "[A] district court has the power to dismiss a complaint *sua sponte* for failure to state a claim upon which relief can be granted only where a plaintiff has been given an opportunity to be heard." *Palkovic v. Johnson*, 150 F. App'x 35, 37 (2d Cir. 2005) (internal quotation marks and citation omitted). Here, K2M was on notice that its unjust enrichment claim was subject to dismissal by way of Magistrate Judge Stein's Report and Recommendation on K2M's motion for default judgment against Schmidt, which recommended dismissal of that claim as duplicative. [*See* ECF No. 103 at 15–16]. K2M did not object to any portion of the Report and Recommendation.

Accordingly, the Court DISMISSES K2M's unjust enrichment claim against the Lim Defendants as duplicative of K2M's breach of contract claim against them. *See Pro. Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13-CV-6562 RJS, 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (dismissing unjust enrichment claim *sua sponte* as duplicative where court granted summary judgment in favor of plaintiff on breach of contract claim).

## CONCLUSION

For the foregoing reasons, the Lim Defendants' motion to dismiss the Second Amended Complaint is DENIED and K2M's motion for partial summary judgment on its breach of contract claim against the Lim Defendants is GRANTED.  K2M's letter motion seeking oral argument in connection with its motion for partial summary judgment is DENIED as moot.  K2M's unjust enrichment claim against the Lim Defendants is DISMISSED.  As a result, the sole claim remaining for trial is K2M's fraud claim against Lim personally.  *See* SAC ¶¶ 58–70.

The Clerk of Court respectfully is requested to terminate the motions pending at docket entries 70, 74, and 75.


**SO ORDERED.**

**Date:  March 26, 2024**
**        New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

24